IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BENJAMIN BATTS,

    Plaintiff,

v.                                          No. 2:15-cv-02785-MSN-tmp

OFFICER CROOK, ET AL.,

    Defendants.

**ORDER GRANTING DEFENDANT ANTHONY**
**WHITE'S MOTION FOR SUMMARY JUDGMENT**

On December 4, 2015, Plaintiff Benjamin Batts, who is confined as an inmate of the Northwest Correctional Complex, in Tiptontonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion asking leave to proceed *in forma pauperis*. (ECF Nos. 1, 2.) In an order issued December 7, 2015, the Court granted Plaintiff leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)-(b). (ECF No. 4.) On August 17, 2016, this Court dismissed the complaint, but granted leave to amend. (ECF No. 7.) Plaintiff filed a first amended complaint on September 12, 2016 (ECF No. 8.), a second amended complaint on December 29, 2016 (ECF No. 11), a third amended complaint on June 7, 2017 (ECF No. 20), and a fourth amended complaint on July 6, 2017 (ECF No. 21). Plaintiff's fourth amended complaint is verified under penalty of perjury and has the force of an affidavit. (ECF No. 21.)

The Court issued an order on March 31, 2018, dismissing Plaintiff's claims against Defendants Shelby County and City of Memphis but directing that process be issued and served

on Defendant Anthony White ("Defendant"). (ECF No. 22.) Defendant filed an answer to Plaintiff's fourth amended complaint on August 29, 2018. (ECF No. 43.) Defendant moved for summary judgment on September 19, 2019. (ECF No. 98.) Plaintiff did not file a response to Defendant's motion for summary judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). "A genuine dispute of material facts exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 543–44 (6th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, when a recording of the event exists, courts should not adopt any of the plaintiff's alleged facts that are blatantly contradicted by the recording. *Id.* at 380.

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of

material fact." *Mosholder*, 679 F.3d at 448–49 (citing *Matsushita*, 475 U.S. at 587; Fed. R. Civ. P. 56(e)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (quoting *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)).

> When the nonmoving party fails to respond to a motion for summary judgment, the moving party must still meet its burden under Rule 56 and the Court must still find that there is no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. However, in the absence of a response to a motion for summary judgment, "the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'"

*Liberty Steel Prods. v. Acore Door Co.*, NO. 4:05CV1124, 2006 U.S. Dist. LEXIS 32490, at *11 (N.D. Ohio May 22, 2006) (citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992)).

## DISCUSSION

Defendant contends he is entitled to judgment as a matter of law because he did not subject Plaintiff to excessive force. In addition, Defendant contends that even if Plaintiff's constitutional rights were violated, he is entitled to qualified immunity because the right which Plaintiff claims was violated was not clearly established. In support of the motion for summary judgment, Defendant relies on dashcam footage of Plaintiff's arrest (ECF No. 98-3) and his own declaration (ECF No. 98-4).

On April 27, 2015, Plaintiff robbed a convenience store with a knife in Memphis, Tennessee and then led Shelby County Sheriff's Deputies and Memphis Police Department ("MPD") Officers on a high-speed chase that ended on the interstate when Plaintiff's vehicle ran

out of fuel. (ECF No. 98-1 at PageID 538.) In his fourth amended complaint, Plaintiff alleges that when he stopped his vehicle, Defendant and several other law enforcement officers surrounded his vehicle with weapons drawn and ordered Plaintiff to step out of his vehicle. (ECF No. 21 at PageID 127.) Plaintiff alleges he was unable to exit his vehicle because his seatbelt was fastened and avers he did not reach for his seatbelt because he feared doing so would be construed as reaching for a weapon and that he would be shot. (*Id.*) Plaintiff alleges he heard Deputy T. Simmons, yell "let the dog go" on Plaintiff. (*Id.*) Plaintiff then alleges Defendant opened the driver-side door of his vehicle and yelled, "Don't get out then A—Hole! Meet my furry friend Mother F---ER," authorizing a police dog ("K-9") to bite him. (*Id.* at PageID 128.) Plaintiff alleges Deputy T. Simmons allowed the K-9 to bite Plaintiff repeatedly for two to three minutes. (*Id.*) Plaintiff alleges that Deputy T. Simmons reached in and released his seatbelt and that Deputy Crook grabbed his neck and threw him to the ground. (*Id.*) Plaintiff alleges that once he was restrained and in the police car, he complained to deputies several times about being in extreme pain and requested to go to the hospital. (*Id.*) Plaintiff alleges that the deputies ignored his request for medical treatment and that he did not receive any medical assistance until two to three hours later, at which time deputies took Plaintiff to Regional One Medical Trauma Center for surgery. (*Id.*) Plaintiff alleges he suffers from post-traumatic stress disorder and has permanent injuries as a result of his arrest. (*Id.*) Plaintiff asserts Defendant is liable for excessive force and deliberate indifference to his medical needs because Defendant authorized the use of the K-9, took no action to stop the use of it (but was able to), and ignored his requests for medical assistance. (*Id.* at PageID 129–30.)

      In Defendant's declaration, he states that footage from his dashcam disproves Plaintiff's version of events. In particular, Defendant alleges he was the first deputy to approach Plaintiff's

vehicle on the passenger side and that Defendant did not go around to the driver-side of Plaintiff's vehicle until after Plaintiff was pulled from the vehicle by another deputy. (ECF No. 98-4 at PageID 566.) Defendant further avers, "[a]t no time was I in control of the K-9 unit." (*Id.*) Defendant also avers that he and the other deputies believed Plaintiff had a knife concealed under his leg at the time he was pulled over. (ECF No. 98-1 at PageID 538.) In his motion for summary judgment, Defendant alleges several differences between Plaintiff's version of events and what is shown on the dashcam footage:

> Contrary to Plaintiff's claims, Deputy White did not even appear on the driver's side of the truck until after Plaintiff had been pulled out of the truck. (Dashcam at 1:36:04). Instead, White was occupied at the passenger's side of the truck, accompanied by an MPD officer, trying to take control of the two passengers in the truck. (*Id.*). White removed the passengers from the truck and placed them under arrest. (*Id.*).
> Meanwhile, another Sheriff's Deputy approached the driver's side of the truck, pointing a flashlight towards Plaintiff. (*Id.*). Plaintiff alleges that Deputy White opened the driver's door, but the video shows that Deputy White was not even on that side of the truck when Plaintiff's driver's side door was opened. (*Id.* at 1:35:37 – 1:35:42). After a deputy (not Deputy White) opened the driver's side door, that deputy drew his service pistol and pointed it in Plaintiff's direction for less than six (6) seconds, while ordering Plaintiff to exit the truck. (*Id.*). Plaintiff refused to comply with the deputy's demand and stayed seated inside the truck. (*Id.*). Another deputy ("K-9 Deputy"), accompanied by a K-9, then signaled to the deputy aiming his pistol at Plaintiff to step back. (*Id.* at 1:35:43). The deputy did so immediately, leaving the area entirely. (*Id.*).
> During this timeframe, Deputy White is still on the other side of the truck. (*Id.* at 1:35: 43 – 1:35:50). The K-9 Deputy then approached Plaintiff, who was still refusing to get out of the truck, and used the K-9 to subdue Plaintiff so he could reach in and unbuckle Plaintiff's seatbelt (presumably to avoid be stabbed by Plaintiff as no one knew where Plaintiff's concealed knife was). (*Id.* at 1:35:50). The K-9 was only on Plaintiff for roughly thirty-six (36) seconds—as opposed to the two to three minutes as Plaintiff alleges. (*Id.* at 1:35:50 – 1:36:26). Further, contrary to Plaintiffs allegations, Plaintiff was not grabbed by the neck and thrown to the ground, but was grabbed by his shirt and laid on the ground. (*Id.*).
> As the video makes clear, Deputy White was never in control of the K-9, nor was he ever in contact with the K-9 deputy until the very end of Plaintiff's encounter with the K-9. (*Id.*). In fact, Deputy White helped to slow Plaintiff's descent to the ground once he became involved. (*Id.*). The K-9 Deputy pulled the K-9 off Plaintiff after he was removed from the truck, and Deputy White turned

> Plaintiff over on his stomach to arrest him. (*Id*. at 1:36:26). The K-9 Deputy and the K-9 left the immediate vicinity shortly afterward. (*Id*. 1:36:35 – 1:36:53).
> Plaintiffs' [sic] claim that he did not receive any medical treatment for two to three hours is also patently false in light of the video. Less than sixteen minutes after the dog-bite, the video shows EMTs arriving on the scene and providing Plaintiff medical assistance. (Dash Cam Footage at 1:35:50 – 1:55:15.).

(ECF No. 98-1 at PageID 541–43.)

Liberally construing Plaintiff's fourth amended complaint, Plaintiff alleges that Defendant violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Because Plaintiff was not a convicted prisoner at the time of the alleged excessive force, Plaintiff's excessive force claim does not arise under the Eighth Amendment. *See Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). In *Graham v. Conner*, the Supreme Court held "that all claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a 'substantive due process' approach." *Graham v. Conner*, 490 U.S. 386, 395 (1989) (emphasis in original). In this case, Plaintiff's constitutional claims are based on alleged excessive force that occurred during his arrest. Since the Fourth Amendment provides the specific constitutional protection from excessive force during an arrest, that amendment should be the basis for analyzing Plaintiff's claim. Therefore, the Court construes Plaintiff's claim as being brought only under the Fourth Amendment and dismisses Plaintiff's Fifth, Eighth, and Fourteenth Amendment excessive force claims against Defendant for failure to state a claim upon which relief may be granted. *Graham*, 490 U.S. at 395; *Ewolski v. City of Brunswick*, 287 F.3d 492, 507 (6th. Cir. 2002).

In the instant motion, Defendant asserts qualified immunity against Plaintiff's claim of excessive force. (ECF No. 98-1.) "The doctrine of qualified immunity protects government

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ables v. Shelby Cnty., Tennessee*, No. 2:10-CV-02169, 2010 WL 3024959 (W.D. Tenn. July 29, 2010) (McCalla, C.J.) (quoting *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009)) (internal quotation marks omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

Qualified immunity is evaluated under a two-step analysis: "(1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation." *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th. Cir. 2009) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th. Cir. 2009)). District courts are permitted to use "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Interpreting the Supreme Court's language in *Pearson*, the Sixth Circuit stated, "we need not decide whether a constitutional violation has occurred if we find that the officer's actions were nevertheless reasonable." *Jefferson v. Lewis*, 594 F.3d 454, 460 (6th Cir. 2010).

Qualified immunity will be appropriate for the defendants if the rights alleged to have been violated were not "clearly established" at the time of the violation. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 702 (6th Cir. 2006) (finding police officers were entitled to qualified immunity as they did not violate a clearly established right.) "[F]or a plaintiff to make a successful § 1983 claim, '[t]he contours of the right must be sufficiently clear that a reasonable official would

7

understand that what he is doing violates that right.'" *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th. Cir. 1996) (alteration in original) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).  The Court must consider the reasonableness of the officers at the scene and time of the arrest, "keep[ing] in mind that officers must often make split-second judgments because they are involved in 'circumstances that are tense, uncertain, and rapidly evolving.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (quoting *Graham*, 490 U.S. at 397).  "If an officer, therefore, makes a mistake as to how much force is required, he will still be entitled to qualified immunity so long as that mistake was reasonable." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 205 (2001)).

Several factors must be assessed in determining objective reasonableness, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight," the demeanor of the suspect, and the size and stature of the parties involved. *Solomon*, 389 F.3d at 174 (citations omitted).

Defendant argues that he is entitled to qualified immunity in this case because dashcam footage of Plaintiff's arrest shows that Defendant did not use excessive force against Plaintiff nor did he ignore Plaintiff's request for medical assistance.  The Court notes that Plaintiff has not exercised his right to respond to Defendant's motion for summary judgment.

The question before the Court is whether Defendant's actions were reasonable under the circumstances.  In looking at the second prong of the qualified immunity test, the reasonableness of the officer's action, to the extent that there was a better course of action that Defendant should have taken during Plaintiff's arrest, the Supreme Court has cautioned against determining reasonableness with the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Having reviewed the dashcam footage from Defendant's squad car (ECF No. 94), and other evidence in the record in the light most favorable to Plaintiff, the Court finds that there are no disputed issues of material fact from which a jury could reasonably find that Defendant's actions were objectively unreasonable. Plaintiff, having just robbed a convenience store with a knife, led deputies on a high-speed chase and refused to get out of the vehicle after a pursuit that ended only because Plaintiff ran out of fuel. The dashcam footage clearly shows Plaintiff leading Defendant on a high-speed chase from 1:20:30 a.m. to 1:35:22 a.m. (ECF No. 94.) At 1:35:40 a.m., Defendant and another deputy walk to the passenger-side of Plaintiff's vehicle, open the passenger doors, and remove two passengers from Plaintiff's vehicle. (*Id.*) At that same time, another Shelby County deputy opens the driver-side door, aims his weapon toward Plaintiff, and orders Plaintiff out of the vehicle but Plaintiff does not move and has his hands up. (*Id.*) Although Defendant did not know where the knife was when deputies approached Plaintiff's stopped vehicle, he had reason to believe Plaintiff was still in control of it. At 1:35:43 a.m., the K-9 handler and K-9 officer approach the driver-side door with the K-9 handler ordering Plaintiff to exit his vehicle. At 1:35:50 a.m., the K-9 handler employs the dog on Plaintiff. (*Id.*) At 1:36:08 a.m., Plaintiff is removed from his vehicle and placed on the ground with the K-9 continuing to bite Plaintiff. (*Id.*) At 1:36:21 a.m., the K-9 is removed from Plaintiff and Defendant turns Plaintiff over on his stomach to arrest him. (*Id.*) At 1:45:42 a.m., deputies move Plaintiff (who is in handcuffs) from the ground to the hood of a deputy's squad car. (*Id.*) At 1:49:25 a.m., EMTs arrive on the scene and begin treating Plaintiff's injuries. (*Id.*)

Under such circumstances Defendant's actions were reasonable. This Court agrees with Defendant that "officers were not required, in a tense and dangerous situation, to stop and calmly discuss with Plaintiff how he should exit the vehicle." (ECF No. 98-1 at PageID 551.)

9

Additionally, Defendant could not have acted unreasonably in utilizing the K-9 because he was never in control of it. Insofar as Plaintiff asserts Defendant and other law enforcement did not address his injuries for two to three hours, such assertion is contradicted by the dashcam footage which shows Plaintiff being treated by EMTs thirteen minutes after the K-9 was removed from Plaintiff. (*See* ECF No. 94 at 1:36:21 to 1:49:25.)

As the Sixth Circuit has stated, "we need not decide whether a constitutional violation has occurred if we find that the officer's actions were nevertheless reasonable." *Jefferson*, 594 F.3d at 460. As stated above, "the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore*, 476 F.3d at 403. Here, Plaintiff has not provided any precedent indicating that Defendant's actions during Plaintiff's arrest and Defendant's response to Plaintiff's request for medical treatment were unreasonable. The Court therefore finds that, notwithstanding Plaintiff's established constitutional right to be free from excessive force, Defendant's conduct was not unreasonable and his motion for summary judgment based on qualified immunity is **GRANTED**.

## CONCLUSION

The Court finds there are no genuine issues of material fact for trial in this case. Therefore, Defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED** this 27th day of November, 2019.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE